In re the MARRIAGE OF James J. CLOSE and Mary E. Close.

Upon the Petition of James J. Close, Appellee,

And Concerning Mary E. Close, Appellant.

No. 90–1212.

Court of Appeals of Iowa.

Oct. 29, 1991.

 

Gregory G. Milani of Keith, Orsborn, Milani & Neary, Ottumwa, for appellant.

Sidney E. Drake of Drake, Wilson & Jay, Centerville, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

James and Mary were married on February 20, 1965. On July 16, 1990, the district court dissolved their marriage and divided their debts and assets. Their twenty-five-year marriage produced one child who was age sixteen at trial. The primary physical care of the child was given to Mary, and the court ordered James to pay child support in the amount of $304 per month.

Both James and Mary are high school graduates. James resides with his girlfriend and her four children. For seventeen years, he has worked as an hourly employee for L & W Quarry and he now earns $8.95 per hour. He is paid for overtime, after working more than forty hours per week, at $13.43 per hour. In 1989 James worked a substantial amount of overtime, and as a result, his gross income for the year was $31,813. Had he worked forty hours a week, his gross income would only have been $18,616. James testified that his job entails inspecting materials and purchasing certified rock for the state. He stated that he probably could not keep his present position without working overtime. However, he believed he could have another job with the same employer were he to curtail his overtime.

Mary continues to live in the family home. She has not been employed and contends that her health prevents her from working. The district court disagreed with Mary's explanation of her unemployment and noted she had both the responsibility and the physical ability to provide for her own support.

The court ordered James to pay alimony to Mary for one year. Under the award, James is to pay $75 per month for the first six months and $45 per month for another

six months. Additionally, the court ordered James to maintain Mary on his health insurance for three years. Finally, the court ordered James to contribute $500 towards Mary's attorney fees.

Mary appeals challenging the child support, alimony, and property distribution provisions of the decree. She also requests an award of attorney fees on appeal.

I. *Scope of Review.* In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). We recognize that "factual disputes which depend heavily on the credibility of witnesses are best resolved by the trial court which has a better opportunity to evaluate credibility than we do." *Maisel v. Gelhause*, 416 N.W.2d 81, 86 (Iowa App.1987).

II. *Child Support.* Mary insists that James's support obligations should be based on his actual earnings which include overtime pay. The district court based James's support obligations on the income he earned in a standard forty-hour work week. Mary also argues that the trial court should have considered James's girlfriend's income in determining James's child support obligation.

A. *Overtime Pay.* It is well established that parents have a legal obligation to support their children. *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976). That obligation should be apportioned according to the ability of each parent to contribute. *In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App. 1984). The Iowa Supreme Court has promulgated guidelines for determining a parent's support obligation, and the guidelines are to be strictly followed unless their application would lead to an unjust or inappropriate result. *See* Iowa Code § 598.-21(4)(a) (1991).

To determine monthly child support payments, the Child Support Guidelines direct the court to multiply the noncustodial parent's "net monthly income" by a particular percentage. The term "net monthly income" is defined under the guidelines as "gross monthly income" less seven specified deductions. While the term "monthly income," whether net or gross, is not specifically defined to include or exclude overtime pay, we assume, but do not decide, that overtime pay falls within the definition.

■ The trial court found that James's overtime pay varied greatly. James acknowledged in his testimony that his overtime work required long days which consisted of "getting up, eating, going to work, coming home, going to bed, getting up." On this record, we find that factoring James's overtime pay into his monthly income for the purpose of determining his support obligations is unjust and inappropriate as determined under the criteria established by the supreme court.

Those criteria are as follows:

(1) Substantial injustice would result to the payor, payee, or child;

(2) Adjustments are necessary to provide for the needs of the child and to do justice between the parties, payor, or payee under the special circumstances of the case; and

(3) Circumstances contemplated in Iowa Code section 234.39 [cost of services provided by the Iowa department of human services].

*See In re Marriage of Bergfeld*, 465 N.W.2d 865, 870 (Iowa 1991).

In *In re Marriage of Heinemann*, we held that the amount of a parent's child support obligation should be determined with reference to the amount of income the parent can actually expect to earn. 309 N.W.2d 151, 152 (Iowa App.1981). We stated income that is entirely speculative in nature, and over which one has little control, must not be factored into a parent's support obligation. *Id.* We also stated our belief that a parent's child support obligation should not be so burdensome that the parent is required to work overtime to satisfy it. *Id.* at 153.

The dissent asserts that James's actual earnings, including overtime pay, should be considered in applying the child support guidelines. For this proposition, the dissent cites *In re Marriage of Lalone*, 469 N.W.2d 689 (Iowa 1991). The court in *Lalone* found the noncustodial parent's income should include compensation he received in the form of annual bonuses. *Id.* at 696. The court did not address the issue of overtime pay.

The two issues present entirely different concerns. In addressing the issue of bonuses, the court in *Lalone* expressed its concern with possible fluctuations in the parent's bonuses. *Id.* The inclusion of overtime pay in the calculation of a parent's net income also raises this general concern. However, overtime pay presents an additional concern not raised by the inclusion of bonus pay.

While bonus pay may be indirectly related to the number of hours an employee devotes to his or her job, overtime pay is *directly* related to the number of hours spent on the job. The crux of this difference is that working hard and working overtime are not the same thing. The court in *Heinemann* specifically addressed the overtime issue. *See Heinemann*, 309 N.W.2d at 153.

The *Lalone* case is further distinguishable on its facts. In that case, the parent earned a base salary of $37,200 per year. *Lalone*, 469 N.W.2d at 696. His income, including bonuses, in 1990 exceeded $144,000. *Id.* His total income had exceeded $100,000 per year for the previous five years. *Id.* As such, his bonuses constituted approximately seventy-five percent of his income.

On the other hand, James's base income is $18,616, per year. With overtime, his income in 1989 was $31,813. Therefore, James's overtime pay constitutes only forty-one percent of his total income.

*Lalone* is simply not persuasive precedent on the question of whether to include overtime pay in the calculation of net income. *Heinemann* specifically addresses the issue.

Under the circumstances of this case, we believe that the inclusion of James's overtime pay in a determination of his monthly income would work a substantial injustice. Were we to base his support obligation in part on his overtime pay, we would clearly be requiring him to work overtime to satisfy his obligation. In light of our decision in *In re Marriage of Heinemann*, we are unwilling to place such an obligation on a parent. While the trial court failed to make such a specific written finding, we on our de novo review can and do.

■ B. *Income of another.* The possible support available to James from another person is not a consideration the district court must weigh in setting the child support award. The trial court in this case was not persuaded that James' girlfriend's income was a factor to be considered in fashioning the award and neither are we. James's girlfriend presumably needs her income to support her four children. We affirm the trial court.

■ III. *Alimony.* Mary, next, challenges the court's award of alimony. She requests an award of $1,000 per month and an order that James pay her health insurance, both to last until Mary remarries or either party sooner dies.

Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code section 598.21(3). *See In re Marriage of Hayne*, 334 N.W.2d 347 (Iowa App.1983).

In determining the appropriate award of alimony, the court observed that the parties' had been separated for four years prior to the decree, and James had voluntarily given Mary one-half of his paycheck during that period. This afforded Mary $1,000 per month for four years while she continued to live in the debt-free family home.

The court was not persuaded by Mary's testimony regarding her ill health. The court believed an award of alimony must be tailored to encourage Mary to become self-supporting. We agree with the trial court. However, we find the trial court's

award insufficient, both in amount and duration, to adequately promote the goal of rehabilitation. We, therefore, modify the award and order James to pay Mary $50 per week for five years.

IV. *Property Division.* Mary also contends that the court's property division is inequitable. She challenges the district court's (1) award to James of a lien in the amount of $5,807 on the house she received, (2) inclusion, in its calculation of the marital debts, certain debts alleged to have been incurred while the parties were separated, and (3) failure to consider, in its division of the marital assets, James's alleged interest in a home he is purchasing with his girlfriend.

The partners in the marriage are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran,* 406 N.W.2d 450, 452 (Iowa App.1987). The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.-21(1). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

■ A. *Judicial Lien.* In dividing the parties' property, the court awarded more property to Mary than to James. The court calculated the value of this difference to be $11,614 and awarded James a lien in the amount of $5,807, or half the difference, against the property awarded to Mary. The district court made this award to equalize the property distribution. We find the award equitable.

■ B. *Miscellaneous Debts.* The court assigned $4,239 in debt to James. Mary alleges that $3,359 of this debt was incurred by James after the parties had separated. Therefore, she asserts that the trial court should not have included this portion of the debt in its calculation of the marital debt. In light of the fact that the court awarded Mary the family home which was originally given to James by his parents and grandparents, we believe the property division, when taken as a whole, is clearly not inequitable to Mary.

■ C. *Interest in Real Estate.* Finally, Mary asserts that, since the separation,

James has acquired an interest in certain real property. She argues that this asset should have been considered by the court in dividing the property. Mary claims that James has acquired a $25,000 interest in his girlfriend's house. The trial court was not persuaded by Mary's proof of this assertion.

Mary failed to show how much, if any, money James has paid toward the house. She has failed to show what portion was paid toward principal, and she has failed to establish the value of the house. The trial court concluded that Mary had failed to show that James had acquired any present pecuniary interest in his girlfriend's home. We agree.

V. *Attorney Fees.* Mary requests an award of attorney fees on appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). We order that each party is responsible for his or her own appellate attorney fees. The costs of this appeal are taxed equally between the parties.

For all the reasons stated, the district court's judgment is affirmed as modified.

AFFIRMED AS MODIFIED.

OXBERGER, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I would consider James's actual taxable earnings which included overtime pay in applying the child support guidelines. *See In re Marriage of Lalone,* 469 N.W.2d 695, 698 (Iowa 1991) (husband's bonus properly considered on issues of alimony and child support). The majority determined it would be unjust to James to base support on other than regular wages for a forty-hour week. They agree with the trial court

that $304 a month ($10 a day) is ample support for a sixteen-year-old girl. I find $304 a month inadequate for a child of sixteen where the father has annual wages of $31,813. There is no basis to exclude James's overtime wages in computing child support, particularly where, as here, without using the overtime wages the ordered support will be inadequate. James has no other children to support, and his daughter is in her last years of high school, which years are particularly expensive years.

The majority appears to feel a divorced noncustodial parent owes his or her family only a forty-hour work week, even if a forty-hour work week does not supply adequate support. Custodial parents devote more than forty hours a week to their children, and a number of parents work extra hours for their families.

I have concern too how the majority's decision will apply to the self-employed or salaried worker. Will he or she claim that taxable income attributable to a forty-hour work week is all that need be considered for child support purposes?