In re the MARRIAGE OF Katherine L. ELBERT and William C. Elbert,

Upon the Petition of Katherine L. Elbert, Appellee,

And Concerning William C. Elbert, Appellant.

No. 91–1722.

Court of Appeals of Iowa.

Sept. 29, 1992.

Donald J. Bormann, Emmetsburg, for appellant.

Paul R. Doster of Lynch, Lynch, Fenchel & Doster, Algona, for appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

The respondent husband appeals a dissolution degree ordering him to pay spousal support and medical insurance coverage for his wife. He contends the district court erred in determining the amount of spousal support and including medical insurance coverage in the award. The petitioner wife requests attorney fees on appeal.

William and Katherine Elbert were married on June 20, 1970. William is forty-six years old, and Katherine is forty-one years of age. Both parties are high school graduates. The parties have two children: Tina, born November 19, 1970; and David, born November 7, 1971.

Katherine worked as a nurse's aide prior to the parties' marriage but quit her job and became a homemaker following Tina's birth. David has been classified as mentally retarded and has required special care and attention throughout his life. Katherine was the primary caretaker of the children at home while they matured. In 1985 Katherine began working as a housekeeper. She held this job for one year and then worked again as a nurse's aide for approximately one year. Katherine also earned approximately $4 an hour collecting advertisements for a newspaper.

Katherine is currently employed as a cook and salad maker earning $4 an hour, and she earns money selling Mary Kay Cosmetics. She is certified as an activity coordinator in Iowa but feels the job is too stressful. Her net monthly income is approximately $563 plus modest earnings from the cosmetics sales. Katherine suffers from chronic headaches and back pain. She also has an injured knee which bothers her if she stands for any length of time.

William entered the Army in 1966; he was injured while serving in the Army and receives a monthly pension of $330 from the Veterans Administration. William is employed with Hormel and intends to remain there until he retires. He is guaranteed thirty-six hours per week at a wage of $11.57 per hour. He grossed approximately $31,481 in 1991; $30,126 in 1990; $27,414 in 1989; $27,957 in 1988; and $27,034 in 1987. William's net monthly income from Hormel is $1942; he also receives $80 per month from a farm. Altogether, William nets approximately $2,352 per month.

On October 18, 1990, Katherine filed a petition for dissolution of marriage. The parties stipulated to the division of real and personal property, and the only issues submitted were spousal support and medical insurance coverage. On March 29, 1991, the district court granted temporary alimony in the amount of $500 per month.

On October 28, 1991, the district court entered an order requiring William to pay Katherine spousal support in the amount of $575 per month for thirty-six months and to maintain his present medical insurance coverage for Katherine's benefit during this same period. Maintaining this medical coverage costs $84.65 per month. The spousal support award will increase to $700 per month on November 1, 1994, when William's medical insurance plan expires, and Katherine will be required to carry her own health insurance. Spousal support is to continue until Katherine remarries or either party dies. William has filed this appeal. Our review is de novo. Iowa R.App.P. 4.

William first contends the court's alimony award is excessive in light of his guar-

anteed income and Katherine's earning potential. William argues the court erred in basing the spousal support award on his actual average earnings over the past five years, including overtime pay, and not on his guaranteed earnings based on thirty-six hours per week at $11.57 per hour. William's guaranteed gross income is $21,659.04 ($11.57 × 36 hours per week × 52 weeks), while his actual average gross income between 1987 and 1991 was $28,802. In addition, William claims the court should have based the alimony award on Katherine's actual earning capacity given her training and skills as a certified activity coordinator instead of basing the award on her current salary as a cook and salad maker.

William cites *In re Marriage of Heinemann*, 309 N.W.2d 151 (Iowa App.1981), and *In re Marriage of Close*, 478 N.W.2d 852 (Iowa App.1991), to support his argument that overtime wages should be excluded in the calculation of a spousal support award. The *Heinemann* and *Close* decisions support William's contention that inclusion of his overtime wages in his net monthly income for the purpose of determining support obligations is inappropriate. However, in a recent decision the Iowa Supreme Court held that overtime wages should be considered when calculating net monthly income for the purpose of determining support awards. *See In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992).

The *Brown* court specifically addressed the issue of whether overtime income should be considered in establishing net monthly income for the purpose of determining the proper amount of child support under the child support guidelines. We believe the *Brown* court's analysis applies equally to the question in the present case of whether overtime wages should be considered in establishing net monthly income for the purpose of determining an award of spousal support. The *Brown* court stated:

> Overtime wages are not excluded as income. Overtime wages are within the definition of gross income to be used in calculating net monthly income for child support purposes.... We agree with the court of appeals that in circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation ... may be appropriate. *Close*, 478 N.W.2d at 854. We also agree that a parent's ... support obligation should not be so burdensome that the parent is *required* to work overtime to satisfy it. *Id.* However, the district court must make a specific finding to that effect.

*Brown*, at 333. No. 91–182, slip op. at 5–6 (Iowa July 22, 1992).

■ Applying this analysis to the question in the instant case, we hold that overtime income should be considered in establishing net monthly income for the purpose of determining an award of spousal support. William's overtime has been consistent throughout the past five years; his overtime income is not speculative. Nothing in the record indicates his overtime income will decline in the future. However, should William's income change substantially, he may seek a modification of the parties' dissolution decree. *See* Iowa Code § 598.21(8)(a) (1991). Having determined the district court properly included William's overtime wages in the calculation of his net monthly income, we turn next to the question of whether the court's alimony award is equitable.

■ When determining the appropriateness of alimony, the court must consider "(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other." *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App.1983) (citation omitted). Alimony is an allowance to the former spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981). Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In*

*re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code section 598.-21(3). *See In re Marriage of Hayne,* 334 N.W.2d 347 (Iowa App.1983).

■ We have considered William's contention that the district court should have based the alimony award on Katherine's earning capacity as opposed to her current salary; we find this claim to be without merit. The evidence suggests available employment in the area as a nurse's aide and activity coordinator. With Katherine's past experience such employment would pay between $5.09 and $6.93 per hour plus benefits, including medical/hospital insurance. However, Katherine has found her past experience in this area undesirable. While she is a person who enjoys working, she feels uncomfortable in a position of responsibility and considers herself a follower—not a leader. In addition, her knee injury restricts her ability to carry out the tasks of nurse's aide and activity coordinator. We believe the more logical long-range solution is for Katherine to continue employment which she enjoys and for which she is more suited. Having carefully applied the above principles to the instant case, we believe the court's alimony award is appropriate.

■ Finally, Katherine requests attorney fees on appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App. 1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). William shall pay $1,000 toward Katherine's appellate attorney fees. The costs of this appeal shall be paid by William.

AFFIRMED.