841 So.2d 185 (2003)
Hal Eugene PALMER, Appellant
v.
Sara Goodwin PALMER, Appellee.
No. 2001-CA-01950-COA.
Court of Appeals of Mississippi.
April 1, 2003.
*187 Rex F. Sanderson, Houston, for appellant.
Gary L. Carnathan, Amory, for appellee.
Before SOUTHWICK, P.J., BRIDGES and MYERS, JJ.
MYERS, J., FOR THE COURT:
¶ 1. The chancellor granted Sara Palmer a divorce from her husband based on the ground of adultery. The chancellor awarded periodic alimony and divided the marital assets. The husband appeals asserting:
1. THE TRIAL COURT ERRED BY AWARDING ALIMONY TO THE WIFE OR IN THE ALTERNATIVE, IN AWARDING ALIMONY IN AN AMOUNT THAT WAS MORE THAN THE HUSBAND CAN PAY;
2. THE TRIAL COURT ERRED BY NOT CONSIDERING THE VALUE OF THE WIFE'S SEPARATE ESTATE NOR DID IT CONSIDER THE MARITAL DEBT WHEN DIVIDING THE MARITAL PROPERTY.

STATEMENT OF THE FACTS
¶ 2. Sara Goodwin Palmer and Hal Eugene Palmer were married on December 26, 1964. Their relationship resulted in two children, both of whom had reached the age of majority prior to the trial court proceeding.
¶ 3. The two lived together until Sara left their marital home on June 11, 2000. They have not cohabited since that date. Sara filed her complaint seeking an irreconcilable differences divorce on August 10. They filed a stipulation to the irreconcilable difference divorce on October 24. On January 17, 2001, Sara filed a motion that sought to withdraw the consent divorce and sought a divorce based on adultery. The motion was granted January 22.
¶ 4. A hearing was held and on September 6, 2001, the trial court issued its opinion. Gene submitted a motion seeking a new trial and on November 28, the trial court issued an amended judgment. The amended judgment was filed the next day. It granted Sara:
1. A divorce based on the ground of adultery;
2. The marital home valued between $62,000 and $86,270, including all furniture and appliances;
3. The 1994 Buick valued between $3,500 and $7,000;
4. Fifty percent of Gene's 401(k), total which was valued at $78,210.22 resulting in Sara receiving $39,105.11;
5. Her entire 401(k), which was valued at $3,000;
6. A $5,000 certificate of deposit;
7. $30,000 life insurance policy on Gene naming her as beneficiary; and
8. Periodic alimony of $600 per month.
¶ 5. Gene was awarded:
1. A house and lot purchased after their separation with marital funds valued at about $30,000 and insured for $40,000.00;
2. A lawnmower worth $3,000;
3. The guns valued at $600;
4 $400 in a savings account;
5. Bonds, valued at less than $2,000 at the time of the hearing but listed as being worth $6,500 at the time of the completion of the 8.05 statement;
6. Fifty percent of his 401(k), total which was valued at $78,210.22 resulting in Gene receiving $39,105.11; and
7. His Goodyear pension plan valued at $50, 496.03 which Gene will draw at age 65.
*188 ¶ 6. Gene was fifty-nine years old at the time of the hearing. Gene is in deteriorating health. Gene has arthritis in his knees, back, and shoulders. He has had a hernia repaired, has been scheduled for gall bladder surgery, and has a growth on his kidney.
¶ 7. Gene never completed high school but had managed to provide a comfortable lifestyle through positions at a Western Auto store and his current employment as a tire salesman for Goodyear. He has worked for Goodyear for the last fifteen years. His approximate net income is $1,950 per month, which includes $409 withheld as part of his 401(k) and $466 withheld as payment on a loan used to purchase his new residence. Gene's actual base salary without commission is $1,620.
¶ 8. Gene's expenses are $1,182.90 per month not including the $466 per month withdrawal from his salary. His liabilities totaled $38,900.
¶ 9. Sara was fifty-five years old at the time of the hearing. She is in fairly good health, although she suffers from high blood pressure and a thyroid condition.
¶ 10. Sara is a high school graduate and works at the Chickasaw County Farm Bureau as a secretary and receptionist. Sara nets approximately $800 per month, which does not include her $111.66 monthly 401(k) contribution. Her monthly expenses totaled $1,241. This does not include what she will have to pay for medical insurance once she loses coverage through Goodyear. Sara has no liabilities. Sara also has an undivided one-half remainder interest in 116 acres of land. Her aunt has a life estate in the land.

LEGAL ANALYSIS
¶ 11. All of the issues raised by Gene involve the same standard of review. It must be reasonably certain to this Court that the chancellor abused his discretion, was manifestly wrong, was clearly erroneous or applied an erroneous legal standard to render a reversal. Barton v. Barton, 790 So.2d 169, 175(¶ 17) (Miss.2001); Duncan v. Duncan, 774 So.2d 418, 419(¶ 4) (Miss.2000).
1. DID THE TRIAL COURT ERR BY AWARDING ALIMONY TO THE WIFE OR IN THE ALTERNATIVE, IN AWARDING ALIMONY IN AN AMOUNT THAT WAS MORE THAN THE HUSBAND CAN PAY?
¶ 12. The guidelines to be used in determining if alimony is appropriate in a particular case were established in Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993). The factors are:
(1) The income and expenses of the parties;
(2) The health and earning capacities of the parties;
(3) The needs of each party;
(4) The obligations and assets of each party;
(5) The length of the marriage;
(6) The presence or absence of minor children in the home;
(7) The age of the parties;
(8) The standard of living of the parties, both during the marriage and at the time of the support determination;
(9) The tax consequences of the spousal support order;
(10) Fault or misconduct;
(11) Wasteful dissipation of assets by either party; or
(12) Any other factor deemed just and equitable.
Id. at 1280. Unlike property division, an on-the-record analysis of the Armstrong factors is not necessary. Thompson v. Thompson, 816 So.2d 417, 420(¶ 9) (Miss. Ct.App.2002).
*189 ¶ 13. Gene first argues that alimony should not be awarded because after the division of marital assets, Sara had no deficit. Equitable distribution is primarily used to attempt a severance of the relationship so that both can begin separate lives. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). Alimony should only be awarded if a spouse would be left with a deficit. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994).
¶ 14. A review of the chancellor's judgment and the record reveals that Sara's expenses each month outpace her income by several hundred dollars. Additionally, Sara will have to obtain medical insurance now that she will not be covered by Gene's company policy. The quote presented by her testimony from the company she worked for was almost three hundred dollars. Gene argues that Sara could sell the assets she was awarded, move into a more practical and economical living arrangement, and then invest the money to cover the difference between her income and expenses. This is curious since Gene also argues that the division of the property was erroneous. An alimony award was proper.
¶ 15. Gene's next argument is that the alimony was unduly burdensome. It is true that alimony should not be used to make one spouse destitute while the other lives in comfort. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). A review of the record reflects that Gene is not able to pay alimony because of his new girlfriend, the woman with whom he committed adultery. The woman testified that she pays for nothing, while Gene pays all the bills. We will not allow a person to persuade us that he or she can not afford alimony payments because he or she wishes to spend that money on other relationships.
¶ 16. Although the chancellor did not go through the Armstrong factors one by one, it is apparent that the chancellor considered all the factors by the in-depth recitation of facts provided in the judgment. We cannot say that the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
2. DID THE TRIAL COURT ERR BY NOT CONSIDERING THE VALUE OF THE WIFE'S SEPARATE ESTATE OR THE MARITAL DEBT WHEN DIVIDING THE MARITAL PROPERTY?
¶ 17. The Mississippi Supreme Court has stated eight factors a chancellor should consider when equitably dividing marital property:
(1) Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
(2) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
(3) The market value and the emotional value of the assets subject to distribution.
(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as *190 property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
(8) Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928. The chancellor need not consider all eight of the factors, but must consider all that are applicable to the property in question. Carrow v. Carrow, 741 So.2d 200, 202(¶ 10) (Miss. 1999).
¶ 18. In order for this Court to make a meaningful review of the chancellor's decision, the chancellor must "separately consider and make findings of fact as to each of the relevant Ferguson factors as a prelude to his actual determination." Heigle v. Heigle, 771 So.2d 341, 346-47 (¶¶ 16, 17) (Miss.2000); Baker v. Baker, 807 So.2d 476, 479(¶ 12) (Miss.Ct.App. 2001). The failure to make such findings is an abuse of discretion that requires reversal and remand. Heigle, 771 So.2d at 348(¶ 20); Baker, 807 So.2d at 479(¶ 12). The chancellor's opinion and order in the instant case does include findings of fact as to the relevant Ferguson factors. The chancellor's recitation of the facts prior to his discussion of the Ferguson factors was sufficient. Although it would have been helpful for chancellors to individually analyze each factor, providing a factual foundation is sufficient. We cannot say the chancellor abused his discretion, was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard.

CONCLUSION
¶ 19. When a chancellor provides a recitation of facts in his judgment that covers most, if not all the Ferguson and Armstrong factors, no reversal is required. A chancellor is in the best position to hear the testimony and view the evidence. Gene has not proven that reversal is required.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J.
IRVING, J., DISSENTING:
¶ 21. The majority affirms the chancellor's decision ordering Hal Eugene Palmer (Gene) to pay an amount of alimony which I believe, based on the record before us, is beyond his means to pay. Therefore, I respectfully dissent.
¶ 22. Gene argues in this appeal that the trial court erred in awarding alimony to his former wife, or in the alternative, erred in awarding an amount beyond his means to pay.
¶ 23. A perusal of the record reflects that Gene was given assets valued at $125,601.114 as his share of the marital estate while Sara was given assets valued at $142,605.11 as her share. Sara's share *191 included the marital domicile valued by an appraiser at $62,000, although the property was valued on the county's tax rolls at $78,210. In arriving at the $142,605.11 figure, I included the lower value. Also, a 1994 Buick, valued between $3,500 and $7,000, was included in Sara's share. As to this asset, I also used the lower value. In addition to her marital share of the estate, Sara has a separate estate consisting of a one half undivided interest in 116 acres of land in which another person owns a life estate.
¶ 24. Gene's base salary is $1,620; with commissions, it is $1,950. His living expenses are $1,648.90. This figure includes the mortgage payment on the house where Gene lives but does not include monthly payments of (a) $100 on a VISA credit card, (2) $50 on a note owed to Goodyear, and (3) $20 on an indebtedness owed to Lowe's. When these amounts are factored in, Gene's monthly expenses total $1,818.90. When the $600 monthly alimony payment is added to Gene's monthly expenses, his total monthly expenditures come to $2,418.90, a figure well above his $1,950 monthly income. Gene is paying $409 from his monthly income toward his 401(k) plan. When this figure is deducted from his monthly income, Gene has only $1,541.50 with which to pay obligations totaling $2,418.90.
¶ 25. Based on the facts presented in the preceding paragraphs, I cannot understand how the majority can justify affirming the trial judge's award of $600 per month in alimony. Even if Gene stopped payments toward his 401(k), plan he still would not have enough income to pay his monthly expenses and the $600 in alimony.
¶ 26. On the other hand, Sara has a monthly income of $911.66 and monthly expenses of $1,241. When the $600 alimony payment is added to Sara's monthly income, she will have a total monthly income of $1,511.66, which figure is $270.66 more than her monthly expenses.
¶ 27. It appears that the majority's only justification for affirming the trial judge stems from the fact that Gene has a live-in girlfriend who does not help Gene pay any of Gene's expenses. The majority, without citing any authority, says: "We will not allow a person to persuade us that he or she cannot afford alimony payments because he or she wishes to spend that money on other relationships."
¶ 28. I find no evidence in the record that Gene was spending any money on his live-in girlfriend. There is no evidence or suggestion that he was paying any of her bills. I know of no authority in this state which requires the girlfriend of a divorced man to help support the man in order to free up some of his income so that his former spouse might receive an award of alimony.
¶ 29. As previously observed, I know of no Mississippi authority which directly addresses the issue of whether the income of a live-in girlfriend may be considered in determining a divorcing spouse's alimony obligation. However, I did find at least one case from another jurisdiction which, though not exactly on point, is nevertheless helpful.
¶ 30. In In re the Marriage of James J. Close and Mary E. Close, 478 N.W.2d 852 (Iowa Ct.App.1991), a former wife argued unsuccessfully in the trial court that the husband's live-in girlfriend's income should be considered in determining the husband's child support obligation. Id. at 854. On appeal, the Iowa Court of Appeals held that "[t]he possible support available to the husband [was] not a consideration the district court must weigh in setting the child support award." Id. at 855. The Iowa Court of Appeals further opined, "The trial court in this case was not persuaded that *192 James' girlfriend's income was a factor to be considered in fashioning the award and neither are we." Id.
¶ 31. In our case, there is no evidence that Gene's live-in girlfriend contributed to Gene's household expenses. Had she done so voluntarily, I believe that the amount she contributed could have been considered by the trial judge in assessing the amount of alimony Gene should pay Sara, but that is not the case. Consequently, for the reasons presented, I dissent. I would reverse and remand to the trial court for further consideration of the alimony award in light of Gene's ability to pay from Gene's income.
SOUTHWICK, P.J., JOINS THIS SEPARATE OPINION.