# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00330-COA

ELEANOR E. ELLISON                                                    APPELLANT

v.

STEPHEN D. WILLIAMS                                                    APPELLEE

DATE OF JUDGMENT:             12/28/2017
TRIAL JUDGE:                  HON. C. MICHAEL MALSKI
COURT FROM WHICH APPEALED:    UNION COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       JOE M. DAVIS
ATTORNEY FOR APPELLEE:        RICHARD SHANE McLAUGHLIN
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              REMANDED IN PART - 06/18/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.    Eleanor Ellison appeals the Union County Chancery Court's division of her and

Stephen Williams's marital estate. Ellison and Williams separated in August 2016 when

Williams moved out of the marital home. Ellison and Williams resided in two homes during

their marriage and owned both at the time of their separation. The Union County Chancery

Court found that both homes were marital property and divided their remaining assets. The

chancellor awarded Ellison sixty percent of the marital estate and awarded Williams the

remaining forty percent. Ellison timely appeals.

### FACTS

¶2.    Ellison and Williams married on April 23, 2007, and resided in a home deeded to

Ellison by her parents (Ingomar Property). Her parents had fully paid for the home, and they deeded it to Ellison in her name only. The couple resided in the home for almost eight years before they decided to purchase another home in a different school district so that Ellison's grandson could attend school there (Highway 348 Property).

¶3. Together Ellison and Williams took out an equity loan on the Ingomar Property to purchase the Highway 348 Property and an additional loan to cover the amount that the equity loan did not. They resided at the Highway 348 Property and rented the Ingomar Property from January 2015 until their separation in September 2016. While residing in the home, Williams took on many repair projects, such as painting rooms, putting down hardwood floors, installing a hot tub, and laying a brick paver around the home.

¶4. After Williams left the marital home, Ellison was solely responsible for the finances of both the Ingomar Property and the Highway 348 Property with the exception of two months. She continued to rent out the Ingomar Property, which covered its mortgage, and began receiving $500 a week from her son to help with the Highway 348 Property mortgage and her living expenses because she was not working. Ellison testified that since the separation, her son had loaned her approximately $35,000.

¶5. Shortly after Williams's departure, he began an extramarital relationship. In January 2017, Ellison filed a complaint for divorce and cited Williams's adultery. After a hearing in November 2017, the chancellor granted the divorce and awarded Ellison sixty percent of the marital estate and Williams forty percent. The chancellor also found that the $35,000 loan from Ellison's son was not marital debt, and the chancellor did not award either party

attorney's fees. In 2018, Ellison filed a motion to reconsider, which was denied by the chancery court. Aggrieved, Ellison appealed. After review of the record, we affirm the chancellor's judgment in part and reverse and remand in part for further proceedings.

## STANDARD OF REVIEW

¶6. "It is well settled that this Court applies a limited standard of review on appeals from chancery court." *Rodgers v. Moore*, 101 So. 3d 189, 193 (¶8) (Miss. Ct. App. 2012) (internal quotation mark omitted). "The chancery court's factual findings will not be disturbed if they are supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.* "Questions of law receive a de novo review." *Id.*

## DISCUSSION

¶7. Ellison raises three issues on appeal. Ellison asserts the chancellor erred (1) by misapplying the *Ferguson* factors, (2) by not finding the loan from her son was marital debt, and (3) by denying her request for attorney's fees.

### I. *Ferguson* Factors

¶8. Ellison first asserts that the chancellor misapplied the *Ferguson* factors and that she should have been awarded a larger part of the marital estate. In *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), the Mississippi Supreme Court set out the following factors to be considered by the chancellor when dividing marital estates:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
>    a. Direct or indirect economic contribution to the acquisition of the

property;

    b.    Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

    c.    Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2.    The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3.    The market value and the emotional value of the assets subject to distribution.

4.    The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5.    Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6.    The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7.    The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8.    Any other factor which in equity should be considered.

"A chancellor is required to make findings of fact regarding all applicable *Ferguson* factors."

*Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009). "The distribution of marital assets

in a divorce will be affirmed if it is supported by substantial credible evidence." *Id.* The

*Ferguson* factors evaluate the needs, contributions, and conduct of the parties.

¶9. Here, Ellison states that the chancellor did not properly account for the fact that she bore the largest burden in acquiring both properties or for Williams's multiple departures from the home during their marriage and his extramarital relationship. She further states that Williams did not contribute financially during his absences except for paying $200 toward the mortgage in September and October of 2016, leaving her to pay all marital expenses. Ellison testified that before their final separation in September 2016, Williams was absent from the marital home several days in April 2008, February 2008, September 2010, July and August of 2011, October through December of 2012, and for a year lasting from March 2013 to March 2014. Williams testified to leaving the marital home about four times during their marriage. He further admitted he did not contribute to household expenses during his absence.

¶10. In the final judgment, the chancellor reduced Williams's distribution to account for one-half of the air conditioner that Ellison had to replace and one-half of the payments made on the indebtedness during their separation. Accordingly, we find that the chancellor properly accounted for Williams's absences in dividing the marital estate and find this issue without merit.

¶11. Ellison also asserts that the chancellor should have considered Williams's extramarital affair. We agree. The Mississippi Supreme Court has reversed and remanded cases when the chancellor did not consider how an extramarital relationship "impacted and burdened the stability and harmony of the marriage." *Watson v. Watson*, 882 So. 2d 95, 108 (¶68) (Miss. 2004) (quoting *Singley v. Singley*, 846 So. 2d 1004, 1009 (¶13) (Miss. 2002)). "Mississippi

5

is in a minority of states in which marital misconduct is a factor for consideration in property division." Deborah H. Bell, *Bell on Mississippi Family Law* § 6.08[2][e], 176 (2d ed. 2011).

¶12. Here, Ellison did receive a slightly larger portion of the marital estate than Williams, but the chancellor did not cite that as his reasoning. The chancellor stated that he was aware it was Ellison's family home that they first resided in and then leveraged to purchase another home; he therefore awarded Ellison sixty percent. The chancellor awarded Ellison a fault-based divorce but then did not directly consider how Williams's absences and infidelity affected the stability and harmony of the home when dividing the estate. Because we believe the chancellor's lack of consideration was error, we reverse and remand for further proceedings on this issue to allow the chancellor to consider the extramarital relationship in equitably dividing their estate. Additionally, we reverse and remand to allow the chancellor to make a full *Ferguson* analysis on the record.

## II. Marital Indebtedness

¶13. Ellison also asserts that the chancellor erred in ruling that the $35,000 loan from her son was not marital debt. Ellison maintains that had it not been for Williams's behavior she would not have had to borrow money from her son to cover expenses. Ellison testified that the $35,000 included almost $5,000 worth of attorney's fees and $2,300 for the new HVAC system. Ellison also testified that she and her son signed a promissory note dated in 2017 that she would begin paying him back January 2018.

¶14. Williams counters that Ellison was working for her son after her daughter-in-law had a stroke and that the $500 a week her son gave her were wages for Ellison helping them out

around their home and not a loan intended to be repaid. On direct examination, Ellison testified that she did assist her son and his family but did not amount to $500 a week's worth of assistance and that he never gave her a check or a W-2. On cross-examination, Ellison admitted that at one point she did work for her son and that he would pay her $150 or $250 a week, but once he started depositing $500 a week into her account it turned from payment into a loan. Additionally, Williams pointed out that Ellison listed the $2,000 a month she was receiving from her son as income and not as a loan on her Rule 8.05 financial statement.[1]

¶15. Because Ellison failed to affirmatively prove that the loan was not wages earned, we do not find that the chancellor was manifestly wrong or abused his discretion in finding that the loan was not marital debt. Therefore, we find this issue without merit.

### III. Attorney's Fees

¶16. Lastly, Ellison argues that she should have been awarded attorney's fees because she demonstrated that she was unable to pay. The Mississippi Supreme Court has held that:

> The award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. Attorney fees are not generally awarded unless the party requesting such fees has established the inability to pay. The fee should be determined that the legal work charged for was reasonably required and necessary. When considering an award of attorney fees, a sum sufficient to secure a competent attorney is the criterion by which we are directed. The fee depends on relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case. Attorney fees have been refused where little or no evidence has been presented to substantiate the amount requested. Unless the chancellor abused his

---

[1] UCCR Rule 8.05.

discretion or is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal.

*Creekmore v. Creekmore*, 651 So. 2d 513, 520 (Miss. 1995) (internal quotation marks omitted).

¶17.    Here, Ellison testified that she paid her attorney's fees out of the loan from her son, but she provided no proof of the amounts paid or her inability to pay.  Accordingly, without proof, we find that the chancellor did not abuse his discretion or was manifestly wrong and affirm his decision to deny the request.

## CONCLUSION

¶18.    After review of the record, we affirm the chancellor's decision to classify the loans made to Ellison as non-marital debt and the denial of attorney's fees.  We reverse and remand for further proceedings to allow the chancellor to reconsider Williams's extramarital relationship as a factor in dividing the estate.

¶19.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., J. WILSON, P.J., McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.  TINDELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**TINDELL, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶20.    Because the chancellor heard evidence of Williams's extramarital relationship and thereafter awarded Ellison with a greater percentage of the marital estate, I would affirm the chancellor's judgment in its entirety.  Where substantial evidence supports a chancellor's findings, the Court is without authority to disturb the chancellor's conclusions even if it

8

would have found otherwise in the original matter. *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). We have previously held that "failure to make an explicit factor-by-factor analysis does not necessarily require reversal where we are satisfied that the chancellor considered the relevant facts." *Palmer v. Palmer*, 841 So. 2d 185, 190 (¶18) (Miss. Ct. App. 2003). Unless the chancellor's judgment was manifestly wrong, clearly erroneous, or applies an erroneous legal standard, the judgment should stand. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011).

¶21. The final judgment does address Williams's adultery in the chancellor's findings of fact. Further, after conducting a full *Ferguson* analysis, the chancellor awarded Ellison sixty percent of the marital assets and forty percent to Williams. Substantial evidence supported the chancellor awarding a greater portion of the marital estate to Ellison, and he did so accordingly. For these reasons, I find no manifest error in his conclusions and respectfully dissent in part from the majority's opinion.

**CARLTON, P.J., GREENLEE AND McCARTY, JJ., JOIN THIS OPINION.**