247 N.W.2d 219 (1976)
In re the MARRIAGE OF Cathryn FLEENER and Jerry Dean Fleener.
Upon the Petition of Cathryn FLEENER, Appellant,
and Concerning Jerry Dean FLEENER, Appellee.
No. 2-57080.
Supreme Court of Iowa.
November 17, 1976.
Heslinga & Heslinga, Oskaloosa, for appellant.
Gilbert & Stoddard, Oskaloosa, for appellee.
Submitted to REYNOLDSON, Acting C. J., and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.
LeGRAND, Justice.
A decree dissolving the marriage of Cathryn Fleener and Jerry Dean Fleener was entered on January 15, 1974. It provided that custody of their two children, who were then eleven and seven years old respectively, should be awarded to Cathryn. The decree also awarded child support and made disposition of the property owned by the parties. It awarded no alimony.
Cathryn appeals and asks us to increase the amount of child support; to award her suitable alimony; and to fix her attorney fees on this appeal.
No question of custody or rights of visitation is involved. Neither does Cathryn contest the provisions of the property settlement effected. With the modifications hereafter set out, we affirm the trial court.
The parties were married in 1962 when both were quite young. At the time of the divorce, Cathryn was 28 and Jerry 29. Jerry had graduated from Iowa State University with a degree in agronomy. Cathryn finished high school.
*220 Jerry has worked his entire adult life for Allied Chemical & Gas Company of Oskaloosa, Iowa, a company owned by his maternal grandparents, Mr. and Mrs. Henry Hackert. His income varies because he is paid a bonus in addition to his salary. At the time of the decree, his base salary was $10,000 per year. In addition, he was provided a car and a small travel allowance of $50 per month. In 1971, he earned $15,502.84. In 1972, his earnings were $16,473.29. From 1968 through 1972, the last year for which figures are available, Jerry's earnings showed a substantial annual increase. Cathryn was unemployed during the marriage. The parties separated in January of 1973, when Cathryn and the two children moved to Cedar Rapids. At the time of the decree, she was employed there, earning a gross salary of $425 per month.
The parties lived well and accumulated little by way of net worth. Their total assets amounted to $57,622, most of which was tied up in the value of a home and furnishings which together had a fair market value of $55,000. However, these assets were offset by combined liabilities of $51,768.11. Again, most of the indebtedness was against the house, which the decree described as "inordinately expensive." The trial court fixed the net worth of the parties at $5,853.89. Neither Cathryn nor Jerry disputes these figures.
At the time of their marriage, neither Cathryn nor Jerry had any property. What they now have was accumulated by their joint efforts, Jerry by working and supporting the family and Cathryn by caring for the home and rearing the children.
It is contended both expected to remarry, but the evidence discloses nothing of Cathryn's future marital plans. At trial time Jerry had already established his prospective bride and her two children by a previous marriage in the home which he and Cathryn had built. Cathryn and her two children, on the other hand, were living in a two bedroom apartment in Cedar Rapids for which she paid rent of $155 per month.
Cathryn was given only the furniture in the children's bedrooms, a 1965 Pontiac automobile, her own clothing and personal effects, certain specified items of furniture and furnishings and one-half of the dishware, silverware, pots and pans, linens and towels. All else went to Jerry.
Although the trial court awarded Jerry substantially all the property, this amounted to little more than an opportunity to redeem it from almost hopeless indebtedness because he took it subject to all obligations of both parties except several incidental debts Cathryn incurred after their separation.
Jerry was ordered to pay Cathryn $5,000 by way of property settlement to be paid either in one lump sum or in annual installments of $1,000. If he elected to make annual payments, the unpaid installments were to bear interest at the rate of seven percent. This represented virtually the total net worth of the parties. Cathryn does not contest the property settlement, but insists she should also have alimony.
I. Payment of alimony is not an absolute right. It depends upon the circumstances of each particular case. Upon a dissolution of marriage, § 598.21, The Code, requires the trial court to make such order concerning custody, child support, property and maintenance as is "justified." Precedent is of little value, and each case must be decided on its own peculiar circumstances. For standards to be used in reaching a determination, see Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968) as modified by In Re Williams, 199 N.W.2d 339, 344 (Iowa 1972). For a discussion of the application of these criteria to varying factual situations, see Behrle v. Behrle, 228 N.W.2d 25, 27 (Iowa 1975); In Re Marriage of Cooper, 225 N.W.2d 915, 919 (Iowa 1975); In Re Marriage of Winter, 223 N.W.2d 165, 169 (Iowa 1974); In Re Marriage of Zoellner, 219 N.W.2d 517, 524 (Iowa 1974); In Re Marriage of Matson, 215 N.W.2d 358, 359 (Iowa 1974); In Re Marriage of Downing, 210 N.W.2d 436, 438 (Iowa 1973). We have reviewed the record before us and we agree with the trial court that Cathryn is not entitled to alimony in this case.
*221 II. However, we agree with Cathryn that there should be a modification in the amount and terms of child support. The decree awarded child support in the amount of $25 per child per week, with the stipulation that during the four weeks during which Jerry was to have the children during the summer, support payments should terminate. Both parents have an obligation to support their children, but this obligation is not necessarily to be borne equally by them. It should be apportioned according to the fair ability of each to contribute. In Re Marriage of Carney, 206 N.W.2d 107, 112 (Iowa 1973). We believe two changes should be made in the child support provisions. Instead of paying $25 per week for each child, Jerry should pay $40 per week for each child.
In addition, we order that support payments should not be suspended during the four weeks Jerry has the children with him during the summer. Most of the expenses of maintaining a home for herself and her children will continue for Cathryn even during this period. The only difference is in food and incidental expenses. We hold these are not sufficient to permit an interruption in support payments. In Re Marriage of Glass, 213 N.W.2d 668, 670-671 (Iowa 1973).
III. Cathryn also asks an allowance of attorney fees on this appeal. Her attorney has submitted a statement in the amount of $702.50. Of that amount, $215 was included on the assumption the case would be orally argued. The matter was submitted without oral argument, and this estimated cost is therefore eliminated. This reduces the claim to $487.50, which we order paid by Jerry as part of the costs.
IV. With the modifications heretofore set out, the decree of January 15, 1974, is affirmed.
MODIFIED AND AFFIRMED.