**IN THE COURT OF APPEALS OF IOWA**

No. 13-1855
Filed August 13, 2014

**IN RE MARRIAGE OF SCOTT ALAN ICKES
AND DOROTHY MARIE ICKES**

**Upon the Petition of
SCOTT ALAN ICKES,**
      Petitioner-Appellant/Cross-Appellee,

**And Concerning
DOROTHY MARIE ICKES,**
      Respondent-Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Lee County, John G. Linn, Judge.

Petitioner and respondent appeal and cross-appeal the economic provisions of a decree of dissolution of marriage. **AFFIRMED.**

Marlis J. Robberts of Robberts & Kirkman, L.L.L.P., Burlington, for appellant.

Robert N. Johnson III, Fort Madison, for appellee.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

In this appeal and cross-appeal, Scott and Dorothy Ickes challenge the economic provisions in the decree dissolving their marriage; specifically, the awards of spousal support and attorney fees. As frequently occurs in these types of cases, the payor contends the porridge is too hot, and the payee contends the porridge is too cold. We conclude the porridge is just right. We affirm the judgment of the district court.

I.

We review dissolution of marriage proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and decide anew the issues properly preserved and presented for appellate review. See *id.* While we give weight to the findings of the district court, those findings are not binding. *See* Iowa R. App. P. 6.904(3)(g); *McDermott*, 827 N.W.2d at 676. We afford the trial court considerable latitude in determining spousal support awards. *See In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). We will disturb the district court's ruling only where there has been a failure to do equity. *Id.* We review an award of attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

II.

Spousal support is a stipend paid to a former spouse in lieu of the legal obligation to provide financial assistance. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). A party does not enjoy an absolute right to

spousal support after dissolution of the marriage. *See* Iowa Code 598.21A(1) (2013) (providing that "the court may grant an order requiring support payments to either party"); *Anliker*, 694 N.W.2d at 540. The criteria for determining the entitlement to and the amount of support, if any, include, but is not limited to, the length of the marriage, the age and health of the parties, the property distribution, the parties' educational level, the earning capacity of the party seeking support, the feasibility of that party becoming self-supporting at a standard of living comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal. *Id.*

The determination of the need for spousal support and the amount of any such support cannot be reduced to a mathematical formula; the facts and circumstances of each case are too varied for the support determination to be reduced to a table or grid. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (stating precedent is of little value because the decision to award support and the determination of the amount of such support is based on the unique facts and circumstances of each case). Instead, the court must equitably balance the spouses' respective prospective needs and means viewed in the light of the standard of living they enjoyed while married. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993) (stating "the ability of the one spouse to pay should be balanced against the needs of the other spouse"); *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983) (stating a party is entitled to receive support only in an amount sufficient to

maintain the standard of living previously enjoyed without destroying the other party's right to enjoy a comparable standard of living).

The district court awarded Dorothy spousal support in the amount of $2200 per month until she turns sixty-five or until either party dies, whichever occurs first. Scott contends the award is too large and should be reduced to $1000 per month. The bases of his contention are the district court failed to fully consider the indebtedness Scott will carry as a result of the parties' property settlement, failed to properly account for Scott's significant monthly expenses, and failed to fully consider Dorothy's earning capacity and expenses. Dorothy contends the award is too small and should be increased to $2750 per month. The bases of her contention is that she has limited earning capacity going forward, Scott's income will continue to increase, and the award is otherwise inequitable when considering all relevant factors.

Scott and Dorothy were married for thirty-one years. They are the parents of two adult children and one minor child, P.I. Although Dorothy was the primary caretaker of the parties' three children, upon stipulation of the parties, the district court granted the parties joint legal custody of P.I., with Scott to have physical care of P.I. The district court ordered Dorothy to pay Scott $450.89 of child support per month, offset against the alimony Scott must pay Dorothy. Given P.I.'s present age, the child support payments will continue for approximately two more years.

At the time of trial, Scott was fifty-two years old and in good health. He holds a bachelor's degree and is working towards a master's degree in

sustainable development, which is being paid for by his employer, Climax Molybdenum, where Scott has worked as an environmental and quality assurance manager for the past seven and one half years. Scott earns a salary of $110,800 and is eligible for an annual discretionary bonus. Scott has received this discretionary bonus in six of the seven years of his present employment. Including bonus, Scott's gross annual income for the last three years has been as follows: 2011 - $131,809; 2012 - $150,800; 2013 - $146,800. In his affidavit of financial status signed February 15, 2013, Scott stated his gross monthly income was $12,258.33, or $147,099.96 per annum.

At the time of trial Dorothy was fifty-one years old. Dorothy is a high school graduate and has attended one year of college. During much of the parties' marriage, Dorothy worked as the homemaker and caretaker of the children. She did work some outside the home, but she had to terminate her employment on several occasions when the family relocated for Scott's employment. Since moving to Iowa, Dorothy has obtained her CNA and works fifty to seventy hours every two weeks earning eleven dollars per hour. She contends she suffers from a number of health problems, including a bulging disc, type II diabetes, knee pain, and swollen ankles that limit her employment prospects. The district court considered her claim and concluded Dorothy had an earning capacity of $30,000 per year. We agree with that finding and adopt it as our own.

Scott seems to argue the district court overstated his income by including Scott's discretionary bonus as part of his annual income. We conclude the

bonus should be considered income for the purposes of establishing alimony. The bonus has been paid consistently throughout Scott's employment with Climax. It would be inequitable to exclude the bonus from Scott's annual income when it has been a consistent and substantial part of the parties' joint income over the last seven years. *See In re Marriage of Nelson*, 570 N.W.2d 103, 105 (Iowa 1997) ("When deciding whether bonuses are to be included in gross income, we examine the employment history of the payor over the past several years to determine whether the amount of money paid from year to year was consistent. If so the bonuses should be included in gross income."); *In re Marriage of Lalone*, 469 N.W.2d 695, 698 (Iowa 1991) (finding bonus treated as income in setting alimony amount); *In re Marriage of O'Rourke,* 547 N.W.2d 864, 866 (Iowa Ct. App. 1996) ("The district court correctly determined [previous bonuses] should be considered part of [payor's] income for purposes of determining the amount of alimony . . . ."). Further, in preparing his affidavit of financial status and in completing his child support guideline worksheet, Scott included the bonus in calculating his own annual income.

We now directly address the parties' respective arguments. Although the details of the parties' arguments regarding their respective income and expenses are different, they are essentially the same. Scott argues, given his income and expenses, the spousal support award will leave him substantially worse off and Dorothy better off. Dorothy argues, given her income and expenses, the spousal support award will leave her substantially worse off and Scott better off. Both parties are correct in one sense: neither will enjoy the standard of living they

enjoyed while married. The parties incurred substantial indebtedness during the course of their marriage that must be repaid. With several exceptions relating to the allocation of small credit card debt and a loan against a life insurance policy, the parties stipulated to the allocation of debt. The final allocation of debt between the parties was as follows: Dorothy to be responsible for $26,000 in debt, and Scott to be responsible for approximately $138,000 in debt. The two most significant obligations Scott agreed to pay as part of the property settlement were a loan taken against his retirement plan and loans used to finance the parties' children's postsecondary education. The total monthly payment for these two obligations alone is approximately $1800. The simple fact is the funds that could have been used to support the parties' standard of living post-dissolution will instead be used to service the obligations the parties incurred during their marriage. This will result in both parties having less disposable income on a monthly basis.

On de novo review, considering all the relevant factors, we conclude the spousal support award does equity between these parties. We do not find the award to be unjustifiably large due to the length of the parties' marriage, Dorothy's role as the caretaker of the parties' children, the parties' agreement that Dorothy would serve that role while Scott advanced his career, and the parties' prospective earning capacity. Similarly, we do not find the award to be too small: while Dorothy is correct she will not have the standard of living she enjoyed while married, neither will Scott. Dorothy cites numerous cases in support of her contention the award is too small. As she notes, however, prior

cases are of limited guidance. *See In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Each case must be decided on its own facts and circumstances. Here, the award of alimony leaves the parties with approximately equal discretionary income and is otherwise equitable.

Scott requests that we modify the alimony award so that it terminates at the time he turns age sixty-five rather than when Dorothy turns age sixty-five. Given the parties' respective needs, and the probability that Scott's income will continue to increase over time, we conclude the duration of support is equitable. If his circumstances following retirement render him unable to continue support at that level, he may petition the court for a modification of the decree. *See In re Marriage of Hayne*, 334 N.W.2d 347, 353 (Iowa Ct. App.1983).

### III.

We next address attorney's fees and costs. The district court awarded Dorothy $7000 in attorney's fees out of a total request of $17,509. "An award of attorney fees rests in the sound discretion of the [district] court and will not be disturbed on appeal in the absence of an abuse of discretion." *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, and any fees awarded must be fair and reasonable. *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Here, we cannot conclude the district court abused its discretion in awarding fees.

We next address the parties' request for appellate attorney fees. An award of attorney fees on appeal is not a matter of right, but rests within the

court's discretion after considering the parties' financial positions. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). "We consider the needs of the party making the request, the ability of the other party to pay," the relative merits of the appeal, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* Neither party was successful in this appeal and cross-appeal. Based on the property settlement and alimony award, the parties are in similar financial positions. We conclude the parties shall be responsible for their respective appellate attorney fees.

With respect to appellate costs, "[a]ll appellate fees and costs shall be taxed to the unsuccessful party, unless otherwise ordered by the appropriate appellate court." Iowa R. App. P. 6.1207. Appellate fees and costs do not include appellate attorney fees. We direct that each party be responsible for their own costs as neither party was successful in their appeal or cross-appeal. *See Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 696-97 (Iowa 2010) (affirming it is an "abuse of discretion to divide costs equally between the parties when one party was fully successful on appeal").

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**