**IN THE COURT OF APPEALS OF IOWA**

No. 14-0532
Filed May 20, 2015

**IN RE THE MARRIAGE OF CONNIE L. DIEKEMA
AND PAUL T. WINGET**

**Upon the Petition of
CONNIE L. DIEKEMA,**
        Petitioner-Appellant,

**And Concerning
PAUL T. WINGET,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Sherman W. Phipps,

Judge.


        A wife appeals the spousal support and property division provisions of the

parties' dissolution decree.  **AFFIRMED AS MODIFIED.**


        James S. Blackburn of Finley, Alt, Smith, Scharnberg, Craig, Hilmes &

Gaffney, P.C., Des Moines, for appellant.

        Amanda G. Jansen and John Hintze of Ahlers & Cooney, P.C., Des

Moines, for appellee.


        Considered by Vogel, P.J., Potterfield and Mullins, JJ.

**MULLINS, J.**

Connie Diekema appeals the spousal support and property division provisions of the parties' dissolution decree. We do not take judicial notice of Paul Winget's bankruptcy proceedings, which occurred after the dissolution decree was filed. We modify the dissolution decree to eliminate the award of spousal support to Paul. We also modify the property division to add a provision that Paul shall not borrow funds using the property as collateral unless at that time he pays Connie her $25,000 lien. We deny Paul's request for appellate attorney fees.

## I.     Background Facts & Proceedings

Connie Diekema and Paul Winget were married in 1990. At the time of the marriage Connie was an attorney working at a law firm and Paul was a student attending Grand View College. Paul graduated from college in 1992 and became a Certified Public Accountant (CPA) in 1998. The parties have two children who are over the age of eighteen and are pursuing college degrees.

Connie filed a petition for dissolution of the marriage on January 4, 2013. The parties entered into a stipulation concerning the value of most of their assets and debts and amount of their respective incomes.

At the time of the dissolution hearing, held in August 2013, Connie was fifty-two years old. She was a shareholder in a law firm, where her annual base salary was $103,200. She also received two bonuses each year. Her total earnings in 2012 were $276,296. Connie was in good health.

Paul was forty-seven years old at the time of the dissolution hearing. He was employed as vice-president and chief financial officer of AIB College of

Business and earned $96,000 per year. Paul also received $2400 annually for doing bookkeeping for his parents. Paul invested $75,000 in TrueCare, Inc. and received $26,000 annually as the company's chief financial officer. He testified the future of the company was in doubt because its debts exceeded its assets. Paul had signed a personal guaranty on TrueCare's line of credit. Because of Paul's background as an accountant, he was primarily responsible for the parties' finances during the marriage. Paul was also in good health.

The district court issued a dissolution decree for the parties on November 18, 2013. The property division was amended in the court's ruling on Connie's motion filed pursuant to Iowa Rule of Civil Procedure 1.904(2). The court determined Paul had dissipated assets worth $18,664.[1] Connie was awarded assets worth $615,632 and assigned liabilities of $241,190, giving her net assets worth $374,442. The court determined the assets awarded to Paul were worth $936,259 and assigned liabilities to him in the amount of $510,250, giving him net assets of $426,009. The court granted Connie a lien of $25,000 on the marital residence, which had been awarded to Paul, "payable to Connie at such time, if ever, said property is sold and the equity equals or exceeds $25,000."

Connie was ordered to pay Paul spousal support of $1750 per month for five years. The court clarified Paul had been awarded "transitional" alimony, rather than traditional alimony, "to allow for Paul to make the transition necessary into self-support with the amount of debt he takes with him from the marriage."

---

[1] This amount included money spent on travel and entertainment with his paramour. The court also included money spent on furnishings for his rental home, because he could have used items from the marital residence.

The alimony would terminate upon Connie's death, Paul's death, or Paul's remarriage.

After the court ruled on her rule 1.904(2) motion, Connie filed a second rule 1.904(2) motion, asking the court to amend and enlarge the decree to provide more certainty as to when Paul would be required to pay her $25,000. Before the court could rule on her motion, however, she filed a notice of appeal.

## II.   Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court, but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

## III.   Judicial Notice

In his appellate brief Paul asks this court to take judicial notice of the fact he received a discharge of his debts in bankruptcy court on October 28, 2014, while the present appeal was pending. In her reply brief, Connie joined in Paul's request that we take judicial notice of the bankruptcy filings.

"To be capable of being judicially noticed, a matter must be of common knowledge or capable of certain verification." *State v. Stevens*, 719 N.W.2d 547, 550 (Iowa 2006). We do not, however, "take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of the parties to the suit already pending." *Reining v. Nevison*, 213 N.W. 609, 611 (Iowa 1927).

Furthermore, to take judicial notice of the bankruptcy proceedings would be to recognize one piece of evidence that is outside the record, without getting a full picture of the parties' circumstances in the aftermath of the dissolution decree. *See In re Marriage of Keith*, 513 N.W.2d 769, 711 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

## IV.    Spousal Support

Connie argues the court should not have awarded spousal support to Paul. She points out Paul earned $124,400 in 2012 and states he is clearly able to support himself. She also points out the award to Paul does not fit within the recognized categories of traditional, rehabilitative, and reimbursement alimony. Connie asserts Paul already has the training, job skills, and work experience necessary to be self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. She asks to have the alimony award eliminated.

Paul responds that he should receive spousal support because the court assigned a large share of the parties' liabilities to him. He also states his actual earning capacity is closer to $96,000, rather than $124,400, because he was unlikely to continue to receive income from TrueCare. He claims the spousal support award will allow him to transition from the lifestyle he enjoyed as one-half of a high-income couple, to being a single self-supporting person.

Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *Id.* Iowa Code section 598.21A(1)

(2013) provides the relevant factors in considering whether spousal support is appropriate, including (1) length of marriage; (2) age and emotional and physical health of the parties; (3) property distribution; (4) educational level of the parties at the time of marriage and when the dissolution action is commenced; (5) earning capacity of the party seeking alimony, including educational background, training, employment skills, work experience, and length of absence from the job market; and (6) feasibility of the alimony-seeking party to become self-supporting with a reasonably comparable standard of living to that enjoyed during the marriage. *See also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

The district court ruled "the alimony in this case would be more appropriately characterized as transitional alimony, to allow for Paul to make the transition necessary into self-support with the amount of debt he takes with him from the marriage." The terms "transitional" and "rehabilitative" have been used interchangeably.[2] *In re Marriage of Smith*, 573 N.W.2d 924, 926-27 (Iowa 1998). The primary goal for rehabilitative or transitional alimony is for the spouse who is receiving alimony to become self-supporting. *Id.* at 926; *see also In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) ("The goal of rehabilitative alimony is self-sufficiency."). It is a "way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989).

---

[2] The characterization of an award of spousal support is not controlling; rather, we consider whether the award was equitable under the factors found in section 598.21A(1). *In re Marriage of Becker*, 756 N.W.2d 822, 827-28 (Iowa 2008).

The court granted spousal support "to allow for Paul to make the transition necessary into self-support with the amount of debt he takes with him from the marriage." "We consider property division and alimony together in evaluating individual sufficiency." *In re Marriage of Debler*, 459 N.W.2d 267, 269 (Iowa 1990). While Paul received a greater share of the parties' debt, he also received a greater share of the parties' assets. Including the lien on the marital residence, the property division is nearly equal.[3] We determine the property division does not give rise to a need for spousal support.

A district court has considerable latitude in making an award of spousal support, and we will disturb the court's award only if it is inequitable. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). On our de novo review, we find the award of spousal support to Paul is not equitable. Paul was capable of earning at least $96,000 per year, and in 2012 had earned $124,400. He is a CPA and does not need a limited period of re-education or retraining in order to become self-supporting. At the time of the dissolution proceedings Paul possessed all of the training and job skills needed to support himself at a level reasonably comparable to that enjoyed during the marriage. We modify the parties' dissolution decree to eliminate the award of spousal support to Paul.

### V. Property Division

In ruling on Connie's rule 1.904(2) motion, the district court amended the division of property to grant Connie a lien of $25,000 on the marital residence, "payable to Connie at such time, if ever, said property is sold and the equity

---

[3] After the lien of $25,000, Connie receives net assets of $399,442 and Paul receives net assets of $401,009.

equals or exceeds $25,000."[4]   Connie is concerned that Paul might borrow additional money against the house to reduce the equity below $25,000 prior to selling the home, thereby reducing her portion of the property division.

In dividing marital property, a court determines what is fair and equitable based upon the particular circumstances of the parties.  *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007).  "Although an equal division is not required, it is generally recognized that equality is often most equitable."  *Id.*

As noted above, taking into consideration the lien of $25,000, the division of property is nearly equal.  As written, however, the $25,000 payment is payable only if the house is sold and the equity equals or exceeds $25,000.  We agree with Connie's assertion that to make the property division equitable, a further provision is needed to secure the $25,000 payment to her.  We modify the parties' dissolution decree to add a provision stating Paul shall not borrow funds using the property as collateral unless at that time, he pays Connie her $25,000 lien.

### VI.   Attorney Fees

Paul requests attorney fees for this appeal.  Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion.  *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).  We consider the needs

---

[4]  Connie filed a second rule 1.904(2) motion seeking clarification of the court's ruling. Paul filed a resistance to the second rule 1.904(2) motion.  Before the court ruled on the second motion, Connie filed a notice of appeal.  The court then entered a ruling stating it did not have jurisdiction to consider the motion.  We do not consider the second rule 1.904(2) motion.  By appealing before the court ruled on the motion, Connie is deemed to have waived and abandoned the motion.  *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000).  Error is preserved on the issues she raises on appeal based on the court's ruling on her first rule 1.904(2) motion.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (noting issues must be raised and decided by the district court in order to be preserved for appellate review).

of the party seeking an award, the ability of the other to pay, and the relative merits of the appeal. *Id.* We determine the parties should each be responsible for paying their own appellate attorney fees.

We affirm the decision of the district court, except as specifically modified in this opinion. Costs of this appeal are assessed one-half to each party.

**AFFIRMED AS MODIFIED.**