**IN THE COURT OF APPEALS OF IOWA**

No. 15-1247
Filed June 15, 2016

IN RE THE MARRIAGE OF ERON ANDREWS
AND MARY ANDREWS

Upon the Petition of
**ERON ANDREWS,**
    Petitioner-Appellant,

And Concerning
**MARY ANDREWS,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary,

Judge.

The husband appeals the economic provisions of the dissolution decree.

**AFFIRMED AS MODIFIED.**

John P. Beauvais Jr. of Deck Law, L.L.P., Sioux City, for appellant.

Michelle M. Lewon of Kollars & Lewon, P.L.C., Sioux City, for appellee.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Eron Andrews appeals the economic provisions of the decree dissolving his marriage to Mary Andrews. Eron maintains the district court's division of marital assets and award of spousal support were not equitable. Eron also maintains the district court abused its discretion when it ordered him to pay $2500 of Mary's attorney fees. Mary asks us to affirm the dissolution decree and to award her appellate attorney fees.

## I. Background Facts and Proceedings

Eron and Mary were married in 1997. It was a second marriage for each party, and each had two children from their first marriages. Mary had physical care of her two daughters, and they lived with the couple in the marital home. The parties had a child in 1998.[1]

Eron filed a petition for dissolution in November 2014. The parties reached agreement and stipulated to several issues before trial, leaving as issues for litigation: spousal support, attorney fees, court costs, and whether Mary was entitled to any additional proceeds for the value of the land where the marital residence was located.

When the matter came to trial in April 2015, the parties had been married approximately seventeen and one-half years. Eron was fifty-four years old and Mary was forty-two. Eron had been working for the same flooring company for approximately thirty years; he installed flooring through Andrews Carpet Service, Inc., of which he is the sole worker and shareholder. Before trial, the parties

---

[1] The child was still a minor at the time of dissolution. The parties do not contest any legal issues involving the minor child on appeal.

stipulated that Eron's annual income is $62,464. Eron testified he works ten-hour days, six days a week. He had been having knee trouble for the last couple years, and he did not believe he could continue working as many hours in the future. He also believed he needed knee surgery at some point in the future, and he would no longer be able to install flooring after he had the surgery.

Eron provided a monthly budget to the court of approximately $4600. He testified that if he used the budget he provided, his lifestyle would not change from the lifestyle he enjoyed while married. He also testified that several items of his budget—the car-related expenses of fuel, insurance, and registration; health insurance; cell phone; internet; and interest for the credit card used for other work expenses—were covered by the corporation, which had gross receipts of approximately $97,000 annually.

Mary was not employed outside of the home for most of the parties' marriage. Early in their marriage, the parties agreed Mary would stay home with the children while they were young. Later, health issues prevented Mary from working outside of the home.

Mary has been diagnosed with two lifelong conditions. The first, Hashimoto Thyroid, is a condition where the immune system attacks the thyroid gland. As a result, Mary is often tired and has issues with her muscles. The second, Arnold Chiari Malformation, is a condition where the brain begins to slump into the base of the skull. Mary had surgery for the condition in 2001, where doctors removed the bottom of her skull so the brain would have more room to fall. Mary's symptoms of headaches, numbness in her limbs, and a lack of balance improved for a while, but they have gradually worsened. Mary

believes she will need another surgery in the future, where the doctors will remove vertebrae from the top of her spine to allow the brain even more room to fall or slump. Mary is on several medications for her conditions, most of which she takes daily. She is also prescribed a narcotic that she takes as needed for pain. Once Mary takes the narcotic, she is unable to work or drive. Mary estimated she takes the narcotic three or four times per week.

At the time of trial, Mary was working in a position she had started in October 2014. Mary performs office clerical work for up to thirty hours a week, and she earns twelve dollars per hour. Prior to trial, the parties stipulated that Mary earns $16,000 annually. She does not receive benefits through her employment and anticipated paying $425.36 per month for her health care insurance once the dissolution was final. Additionally, Mary pays approximately $200 per month in other out-of-pocket medical expenses. Mary has not applied for Social Security disability.

Mary provided a monthly budget of approximately $3900 to the court. The budget included housing and care for herself, the parties' minor child, and Mary's two adult daughters. The younger adult daughter lives with Mary on summer breaks from college and the older daughter has lived with Mary fulltime since returning from Afghanistan in 2011 with a war injury and post-traumatic stress disorder.

The parties disagreed whether the land on which they built the marital home was a wedding gift from Mary's mother to the parties or whether it was given to Mary alone as part of her inheritance or as a gift. On the same day in 1997, Mary's mother conveyed half of the plot of land to Mary and Eron and the

other half to Mary's sister and her husband. At the time it was conveyed, each half of the split plot was assessed at $9075.[2] At the time of the parties' divorce, the land was assessed at $17,700.

As part of the stipulated agreement, the parties agreed Mary would have physical care of the parties' minor child and Eron would pay $759.41 monthly in child support until the child reached age eighteen. The parties also agreed Mary would receive the first $3612.01 from the sale of the marital home.

In the supplemental decree filed June 26, 2015, the court ordered Eron to pay Mary spousal support for fifteen years. Eron is to pay $500 per month during the time he is also paying child support. After the child support obligation ceases, Eron is ordered to pay Mary $1250 in spousal support until the fifteen-year period ends. The court also found that the land was given to Mary as a gift, and the court awarded Mary the initial $9075 value plus half of the increase in value for a total of $13,387.50 and gave her claim priority in the division of assets to be paid from the proceeds of the sale. Finally, the court ordered Eron to pay $2500 of Mary's trial attorney fees.

Eron appeals.

## II. Standard of Review

An action for dissolution of marriage is an equitable proceeding, so our review de novo. *In re Marriage of Thatcher*, 864 N.W.2d 533, 537 (Iowa 2015); Iowa R. App. P. 6.907. "Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and

---

[2] Eron maintains Mary's half of the plot was assessed at $4537.50 at the time she received it, but Mary presented evidence otherwise and the trial court found that the initial value of Mary's half of the plot was $9075.

will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) (citation omitted).

## III. Discussion

### A. Spousal Support

Eron maintains the district court's award of spousal support was not equitable. On appeal, he asks that we reduce both the amount and the duration of the award. He maintains that the award is inequitable because the amount of spousal support is "grossly disproportionate to the difference in the party's incomes." Additionally, he maintains the duration is inequitable "given [his] age and health."

A court may grant an order requiring support payments to either party for a limited or indefinite period of time after considering all of the following factors:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A (2013). Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *Id.*

Iowa law recognizes three forms of alimony—traditional, rehabilitative, and reimbursement—and each has a different aim. *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Rehabilitative spousal support is meant to support an economically-dependent spouse for a limited time in order to provide an opportunity for that spouse to become self-supporting through further education or retraining. *Id.* Reimbursement spousal support provides the receiving spouse with a share of the other spouse's future earnings as repayment for the contributions made to the source of that income. *Id.* Finally, traditional spousal support is "payable for life or so long as a spouse is incapable of self-support." *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989). The court may award a combination of types of alimony. *See Becker*, 756 N.W.2d at 827 ("[T]here is nothing in our case law that requires us, or any other court in this state, to award only one type of support."). The focus is whether the award is warranted by consideration of the factors enumerated by the legislature. *See id.*

Here, the district court explicitly stated it was not awarding Mary reimbursement alimony. It appears the court ordered a combination of traditional and rehabilitative spousal support. In making its determination, the court emphasized Mary's lesser earning capacity, her health concerns, and the seventeen years the parties were married.

Eron maintains the award is too long in duration because it would require him to work the same amount of hours he is currently working, in a labor-intensive job, until the age of sixty-nine. Although Eron may not be able to maintain his current pace of work until the spousal support award is set to end, his future health and choices regarding retirement are too speculative for us to consider at this point. *See In re Marriage of Gust*, 858 N.W.2d 412, 416–17 (Iowa 2015) ("Under this approach, future retirement will ordinarily be considered to raise too many speculative issues to be considered in the initial spousal support award. . . . [W]e simply do not know important facts."). If and when Eron's prospects change, he may file a modification action. *See id.* at 418 ("The most consistent approach with the statutory scheme is that unless all of the factors in Iowa Code section 598.21C(1) can be presently assessed, future retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order.") As such, we decline to modify the duration of the spousal support award.

Eron cites *Gust* for the proposition that Mary was awarded too much of the difference in their salaries. 858 N.W.2d at 412. As our supreme court stated in the recent case *In re Marriage of Mauer*, 874 N.W.2d 103, 107–08 (Iowa 2016), "The legislature has not authorized Iowa courts to employ any fixed or mathematical formula in applying spousal support. . . . [B]ecause [the guidelines] are not Iowa law, they can serve neither as the starting point for a trial court nor as the decisive factor for a reviewing court on appeal."

While we are not bound by any formula or percentage, we believe the district court's award of $1250 per month was overly generous. We modify the award so Eron pays Mary $1000 per month beginning when his child support obligation ceases until the end of the fifteen-year period. We believe the reduction of the award is appropriate even though the parties had a long marriage and Mary has little work experience outside of the home. Moreover, we agree with Eron's assertion that he should not be required to support Mary's adult children. *Cf. In re Marriage of Holcomb*, 471 N.W.2d 76, 78 (Iowa 1991) (holding that the court has no authority to order a child support award for a stepchild, even where there is a close relationship between the stepparent and stepchildren). Additionally, although Mary's out-of-pocket medical expenses are high, she testified that the new policy she intended to purchase had a much lower deductible than her previous insurance plan, so those amounts may be reduced.

We decline to modify the duration of the spousal support award, but we modify the amount so Eron pays $1000 each month beginning when his child support obligation ends throughout the fifteen-year period.

**B. Land**

Eron maintains he should have been awarded a greater share of the land value due to his contributions toward the value. He does not argue the district court erred in its conclusion that Mary received the land as a gift from her mother.

Iowa Code section 598.21(5) provides that the court should divide all property, "except inherited property or gifts received or expected by one party." Section 598.21(6) provides the exception, which allows the court to divide the

inheritance or gift "upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." We consider the following factors when deciding if the exception should apply:

> (1) contributions of the parties toward the property, its care, preservation or improvement[ ];
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013) (citation omitted) (alteration in original).

The district court found that the land was a gift and awarded Mary the entire initial value of the land. But the court also found that Mary commingled the gift by placing the marital home on the land, and placing the home on the land was the reason the value of the land increased as it did. Thus, the court concluded that the initial value of the land was a gift made just to Mary, but the court divided the increase in value between the two parties because it was due to contributions and improvements made by the parties during the marriage.

Considering the factors outlined above and the circumstances of these parties, we find that the division of the value of the land gifted to Mary was equitable.

### C. Trial Attorney Fees

We review the district court's award of trial attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (citation omitted). Additionally, the award must be "fair and reasonable." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Here, Eron was ordered to pay $2500 of Mary's attorney fees. Because Eron was earning approximately four times what Mary earned, we cannot say the district court abused its discretion when it ordered him to pay $2500—less than half—of Mary's trial attorney fees.

### D. Appellate Attorney Fees

Mary asks us to award her appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Because Mary was obliged to defend the district court's decision on appeal and Eron earns approximately four times as much as Mary does annually, we award Mary $4000 in appellate attorney fees.

## IV. Conclusion

We modify the amount of the spousal support award to $1000 per month once Eron's child support obligation ends until the fifteen-year period ceases.

We affirm the district court's division of assets and the award of $2500 in trial attorney fees to Mary.  We award Mary $4000 in appellate attorney fees.

Costs of this appeal are assessed to Eron.

**AFFIRMED AS MODIFIED.**