# IN THE COURT OF APPEALS OF IOWA

No. 20-1677
Filed November 3, 2021

IN RE THE MARRIAGE OF LARRY JAMES EASTMAN
AND RITA MAE EASTMAN

Upon the Petition of
**LARRY JAMES EASTMAN,**
        Petitioner-Appellee,

**And Concerning**
**RITA MAE EASTMAN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, John J. Haney,

Judge.


        Rita Eastman appeals the decree dissolving her marriage to Larry Eastman.

**AFFIRMED AS MODIFIED.**


        Nicole S. Facio of Newbrough Law Firm, LLP, Ames, for appellant.

        C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellee.


        Considered by Vaitheswaran, P.J., Schumacher, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**SCOTT, Senior Judge.**

Rita Eastman appeals the decree dissolving her marriage to Larry Eastman. She argues the spousal support award was inadequate, the property distribution was inequitable, and she should have been awarded trial attorney fees. She also requests an award of appellate attorney fees.

## I. Background

The parties married in 1988. The marriage produced no children. The parties originally lived in Iowa. By agreement, they moved to California to pursue an employment opportunity for Larry. They lived in California from 1988 until 2001. When Larry's employer, Planet Hope, shut down the plant he worked at and sold a patented product to Kimball International, the latter asked him to move to Idaho for employment. The parties were separated at the time, so Larry went to Idaho. Rita stayed in California but later followed Larry to Idaho. While residing in Idaho, Larry requested Rita to find employment to help chip in, but she never did. Then, when operations shut down in Idaho, Larry's employer asked him to move to Indiana. Larry requested for the ability to work from home rather than move, and the company agreed. Rita then suggested the parties return to Iowa, and Larry agreed. This move apparently occurred in 2015.

Larry was seventy-two years old at the time of trial. He graduated high school and had some college. He described his health as "pretty good," despite only having one eye, one kidney, broken ribs, and skin cancer. Larry has worked for Kimball International, a furniture manufacturer, for roughly nineteen years. Prior to that, his employment included working for, in reverse chronological order, another furniture manufacturer in California, Planet Hope, for fifteen years; a

recreational vehicle product company, Dometic, for three or four years; and a toolbox company, Waterloo Industries, for an unspecified amount of time. He wanted to retire several years ago but could not afford it. His current monthly income includes roughly $7500.00 in gross salary, $2869.00 in social security benefits, and $366.00 from his pension from his employment with Waterloo Industries.[1] He also has a pension through his current employer, valued at $32,778.00, all of which accumulated during the marriage.

Rita was sixty-five years old at the time of trial. She graduated from high school and attended some college courses. After graduating from high school, she worked at Waterloo Industries, apparently where she met Larry, for fourteen years, earning $10.50 per hour. She left that job around the time the parties were married in 1988. When the parties moved to California later that year, she took a receptionist job in an escrow office, earning around $12.00 per hour and working full time fifty weeks per year. She then worked for a mortgage lender as a receptionist, and then an underwriting assistant, with slightly better pay. Her final job in California was with a different mortgage company, in which she earned between $25,000.00 and $28,000.00 per year. She testified to doing some landscape work at some point, but she has not been meaningfully employed since 2001, when she followed Larry to Idaho. Rita testified that when she moved to Idaho, she cared for the home and started a dog rescue therein. She stated she also served as her mother's caregiver while living in California and Idaho. In 2014 or 2015, while still living in Idaho, Rita was diagnosed with cervical and ovarian

---

[1] Larry's employment with Waterloo Industries ended before the parties married, and his pension income therefrom relates to employment before the marriage.

cancer. She had surgery, after which she suffered a collapsed lung and kidney failure. Rita testified that, in 2019, after the parties' separation, she was also diagnosed with breast cancer. She stated she had a double mastectomy, developed blood clots in her lungs, and had an extended stay in the hospital. She testified she will undergo chemotherapy for five years and may need more surgery. Currently, she has insurance through Larry's employment and is also on Medicare. Her only source of income at the time of trial was $1000.00 of monthly temporary spousal support from Larry. At the time of trial, however, she was eligible for monthly social security benefits in the amount of $934.00, which factors in a reduction for medical insurance premiums. This amount will increase upon dissolution of the parties' marriage.

The parties purchased the current marital home in 2015 for $150,000.00 from Larry's mother's estate. The home was built by Larry's father with Larry's assistance. The condition of the home was poor when the parties purchased it and has deteriorated further since the parties' separation and while in Rita's possession since 2018. It also suffered damage as a result of the 2020 derecho. The home is currently encumbered by a mortgage in the amount of $107,000.00. Rita believed the home is worth $169,950.00 based on its assessed value, while Larry estimated the home is only worth $150,000.00. Rita later testified the property could be listed anywhere between $200,000.00 and $210,000.00. The home needs a lot of work. Rita is unable to maintain the vegetation on the acreage, and she has no ability to renovate the home.

The parties have taken in a number of rescue dogs over the years. At the time of trial, twenty dogs were in the mix—two living with Larry in his mobile home,

and eighteen residing with Rita because she was in possession of the marital home and had more space. Rita requested she be awarded all the dogs in her care; Larry requested he be awarded half of the dogs. The director of the local animal rescue league (ARL) testified that, shortly before trial, an animal was brought in as a stray, "[a]nd it was in very bad medical shape, and appeared to be neglected." Specifically, the dog had a full-body "skin infection, ear infections, eye ulcers, and a lot of dental work [was] needed." It turned out this was one of the dogs in Rita's care. Pictures of the dog that were admitted as evidence are quite disturbing or, as the district court phrased it, "appalling." The ARL director requested that she and law enforcement be provided an opportunity to inspect the other animals in Rita's care. An appointment was made with ARL, but Rita cancelled it. Rita also evaded the sheriff's department's attempts to view the animals. The dog's afflictions were ultimately fatal. Rita explained to the ARL the issues were caused by a flea medication, the dog was gone for only two days, and the dog's condition was Larry's fault because he allegedly came to the home and let the dog out by leaving the door open. Like the district court, we find her explanations unbelievable. The condition of the remaining animals in the home is unknown due to Rita's evasive maneuvers. Rita was ultimately criminally charged with animal neglect.

The marriage appears to have been rocky but apparently soured permanently after the parties moved to Iowa. A no-contact order was entered

between the parties,[2] and Larry discontinued living in the marital home sometime in 2018. The order has been modified to allow text messaging between the parties and for Larry to go to the marital home on Sunday to mow, but he has elected not to do so on the advice of the local sheriff's department. Late in 2019, Larry petitioned for dissolution of the parties' marriage. Together with her answer, Rita moved for an award of temporary spousal support. In February 2019, the court ordered Larry to pay Rita $1000.00 per month in temporary spousal support and to continue paying the house payment for the marital home.

The matter proceeded to trial over two days in August and September 2020. Based on the court's assignment of all debts to Larry, Larry's old age, and the increase in Rita's social security benefits, the court ordered Larry to pay Rita monthly spousal support in the amount of $1000.00, which, upon Larry's retirement, would be reduced to $200.00 per month. The obligation would cease upon Rita's remarriage or either party's death. Based on the poor condition of the marital home, the court valued it at $150,000.00. The court awarded the home to Larry, and ordered he refinance the property and pay Rita one-half of the equity therein, $21,500.00. One of the parties' four enclosed trailers[3] was a disputed item of personal property, and the court awarded it to Larry. The court awarded all of the dogs to Larry. The parties' motions to reconsider, enlarge, or amend were denied.

Rita appeals.

---

[2] At trial, Rita requested the court to take judicial notice of the dispositional order in the criminal case relating to this no-contact order. In its decree, the court declined to do so, concluding it was not relevant to the issues in the case.

[3] The parties agreed the other three trailers would go to Larry.

## II.     Standard of Review

Appellate review of dissolution proceedings is de novo.  Iowa R. App. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018).  While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them.  Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).  Because the court bases its decision on the unique facts of each case, precedent is of little value.  *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

## III.     Analysis

### A.     Spousal Support

Rita argues the court's award of spousal support in her favor is inadequate.  "[W]e accord the trial court considerable latitude in making th[e] determination [of spousal support] and will disturb the ruling only when there has been a failure to do equity."  *In re Marriage of Stenzel*, 908 N.W.2d 524, 531 (Iowa Ct. App. 2018) (first and third alterations in original) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).

Courts may grant an award of spousal support in a dissolution proceeding for a limited or indefinite length of time after considering all of the following relevant factors:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities

for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

(g) The tax consequences to each party.

(h) Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

. . . .

(j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1) (2018).

As noted, the court awarded Rita traditional spousal support of $1000.00 per month, to be reduced to $200.00 per month when Larry retires. Rita highlights the length of the marriage, her moving several times with Larry to further his employment, her absence from the job market for several years, her lack of income, her health issues and lack of insurance, her lack of retirement savings, and Larry's ability to pay.

We proceed to the statutory factors. The length of the marriage, exceeding thirty years, is beyond the twenty-year durational threshold warranting an award of traditional support. See Iowa Code § 598.21A(1)(a); Gust, 858 N.W.2d at 410–11. Both parties are aging, Larry has some health issues but is generally healthy, and Rita has a history of cancer as well as a current diagnosis that calls for ongoing treatment. See Iowa Code § 598.21A(1)(b). The distribution of property is hard to assess, given the parties' failure to present evidence on the value of several items of personal property or evaluate them on their joint statement of assets and liabilities, but what we do know is Rita left the marriage generally debt free and

with a property settlement of $21,500.00 while Larry left the marriage with all of the parties' debt. *See id.* § 598.21A(1)(c). The parties' educational levels are relatively equal, although Larry's ongoing employment has undoubtedly been a continuing learning experience. *See id.* § 598.21A(1)(d). Despite his age, Larry clearly has a higher earning capacity, given Rita's absence from the job market and health issues. *See id.* § 598.21A(1)(e). Little evidence was presented about the parties' lifestyle during the marriage and, thus, assessing what amount of support Rita would need to maintain that lifestyle is a nebulous task, but we do know that the parties lived a modest, non-extravagant lifestyle. *See id.* § 598.21A(1)(f). Recent changes in federal income tax laws will result in spousal support payments by Larry not being tax deductible, and the payments received by Rita will not be taxable. *See In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020); *see also* Iowa Code § 598.21A(1)(g).

Ignoring the significant debts that were assigned to Larry and assuming he is able to pay, this case would turn on Rita's need for spousal support. *See In re Marriage of Gust*, 858 N.W.2d 402, 411 (Iowa 2015); *see also* Iowa Code § 598.21A(1)(e), (f). Rita cites her lack of income and the expenses she will suffer given her health issues. True, Rita has no employment income, but Rita provided no evidence of the cost of her health issues in the past or what the financial picture would look like once she is no longer covered by Larry's insurance. It was Rita's burden to show she was entitled to spousal support in excess of $1000.00 per month. *See In re Marriage of Robert*, No. 11-0876, 2012 WL 2122310, at *5 (Iowa Ct. App. June 13, 2012). Excluding the mortgage payment, which Larry paid during the proceedings and will continue to pay, Rita's total monthly expenses as

listed on her August 2020 financial affidavit totaled $1120.00, only $250.00 of which related to medical or dental expenses. While Larry paid for some of Rita's expenses during the proceedings, Rita provided no evidence of what her financial picture would look like post-dissolution—what expenses she would be incurring or what her medical expenses would be when only on Medicare. Rita agrees her monthly social security benefits will amount to $1434.50 following dissolution, and she apparently did not utilize her access to her monthly benefits of $934.00 prior to dissolution. Rita presented no evidence that the funds she had available before the dissolution or those available after dissolution were or would be inadequate to support "a standard of living reasonably comparable to that enjoyed during the marriage." *Gust*, 858 N.W.2d at 411 (quoting Iowa Code § 598.21A(1)(f)). As such, we affirm the district court's award of spousal support in the amount of $1000.00 per month.

That said, we agree with Rita that "[a] prospective retirement should not result in an automatic reduction . . . of support." "[T]he question of whether the payor spouse's obligation should [be reduced] at his retirement 'will depend on the circumstances of the parties prevailing at that time.'" *Gust*, 858 N.W.2d at 412–13 (quoting *In re Marriage of Michael*, 839 N.W.2d 630, 639 n.8 (Iowa 2013)). This is because future retirement "raise[s] too many speculative issues to be considered in the initial spousal support award." *Id.* at 416. Thus, the question of whether Larry's "spousal support should be modified upon his retirement must be made in a modification action when retirement is imminent or has actually occurred." *Id.* at 418. We modify the spousal support award to vacate the reduction in support upon

Larry's retirement. The obligation shall continue until Rita's remarriage or either party's death. When Larry retires, he may pursue modification, if he so chooses.

Rita also requests Larry be required to name her as sole beneficiary on his life insurance provided through his employment to secure his support obligation. We decline the request because there is no need for insurance to pay spousal support after Larry's death because his obligation ceases upon his death. *See In re Marriage of Lytle*, 475 N.W.2d 11, 12 (Iowa Ct. App. 1991).

B. Property Distribution

*1. Marital home*

As to the marital home, Rita first challenges the court's valuation for property-distribution purposes. Larry valued the property at $150,000.00, and Rita valued it at either its assessed value of $168,950.00 or somewhere between $200,000.00 and $210,000.00. Given the state of disrepair and damage from the derecho, the court adopted Larry's valuation. Because the court's valuation was within the range of evidence, we will not disturb it. *See In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007).

Rita goes on to argue, given the disparity in the parties' valuation of the home, the most equitable result was for it to be sold. She cites no authority on this argument, so we deem it waived. *See* Iowa R. App. P. 6.903(2)(g)(3). In any event, as noted, the valuation was within the range of the evidence, and a de novo review of the record gives more support to Larry's estimate than to Rita's estimates.

### 2. Trailer

The parties agreed Larry would be awarded three trailers but disputed who would be awarded the fourth. The court awarded it to Larry. On appeal Rita claims this was inequitable. Looking at the balance sheet as a whole, we are unable to find any inequity. Narrowing our vision to the trailers alone—as opposed to the whole picture—as Rita does in arguing each party should be awarded a trailer, we find no inequity there either. Larry put on testimony that he actually has a use for the trailer, while Rita did not. Finding no failure to do equity on this point, we affirm.

### 3. Dogs

Rita challenges the court's awards of all the dogs to Larry. She claims she has always been the primary caregiver of the dogs and the one dog that died from alleged neglect was an outlier. Pets are personal property subject to division in the marital estate. *In re Marriage of Baker*, No. 14-1239, 2015 WL 4163351, at *5 (Iowa Ct. App. July 9, 2015). The distribution of personal property should be done equitably. *See Keener*, 728 N.W.2d at 193. Rita makes no claim awarding the dogs to Larry was inequitable; she only seems to urge she wants them in her care. The record is clear that the care for these dogs is a financially draining task. And Rita's neglect of at least one dog shows she does not have the means to properly care for them and placing the financial burden on her would be inequitable. Also, given Rita's evasion of attempts by the ARL and law enforcement to inspect the other dogs, we highly doubt the dog that died is an outlier. While it is not our duty to determine the best interests of pets, we heed the admonition that we should not put pets in an environment in which they will be abused or uncared for. *In re*

*Marriage of Stewart*, 356 N.W.2d 611, 613 (Iowa Ct. App. 1984). We affirm the court's award of the dogs to Larry.

### C. Attorney Fees

Rita argues the district court abused its discretion in denying her request for trial attorney fees. She highlights the disparity in the parties' incomes and her financial disadvantage. Whether to award trial attorney fees depends on the parties' respective abilities to pay. *In re Marriage of Towne*, ___ N.W.2d ___, ___, 2021 WL 3075938, at *8 (Iowa Ct. App. 2021). While Larry has greater income, at least for now, he left the marriage with significant debt and Rita left the marriage with no debt and a property settlement of $21,500.00. Following the last day of trial, Rita's counsel submitted an attorney fee affidavit in the amount of $2800.00. In the motion to reconsider, enlarge, or amend, counsel indicated his fees were in excess of $4300.00. Considering Larry's level of income and significant debt in comparison to Rita's level of income, lack of debt, and property settlement, we find no abuse of discretion and affirm the denial of trial attorney fees.

Without providing this court with a fee itemization, Rita requests an award of appellate attorney fees in the amount of $6500.00. "Appellate attorney fees in a dissolution-of-marriage action are not awarded as a matter of right but rather rest in our discretion." *Id.* "Factors to consider in determining whether to award appellate attorney fees include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Given the discussion above and the fact that Rita has only minimally prevailed in this appeal on the issue of Larry's spousal support obligation decreasing upon retirement, we deny Rita's request for an award of appellate attorney fees.

**IV.** **Conclusion**

We affirm the district court's award of monthly spousal support in the amount of $1000.00 per month but modify it to vacate the reduction in support upon Larry's retirement. We affirm the property distribution as equitable. We affirm the denial of Rita's request for trial attorney fees and deny her request for appellate attorney fees.

**AFFIRMED AS MODIFIED.**

Vaitheswaran, P.J., concurs; Schumacher, J., partially dissents.

**SCHUMACHER, Judge** (concurring in part and dissenting in part)

I concur with the well-written majority opinion on the affirmation of the trial court's determination of the amount of Rita's alimony prior to Larry's retirement, the property distribution, and the issue of trial and appellate attorney fees. I depart only in regard to the majority's modification of the trial court's determination that Rita's alimony should be reduced upon Larry's retirement. I would affirm the trial court in full.

While the majority relies on *In re Marriage of Gust*, the record here is not speculative as to the retirement income of the parties. *See* 858 N.W.2d 402, 418 (Iowa 2015). The parties to the *Gust* marriage had many years of employment remaining. *Id.* at 405–06. It would be difficult to argue in a modification that under the instant record, retirement was not within the contemplation of the trial court at the time of the entry of the decree. At trial, Larry testified he "wanted to retire six years ago" and wanted to retire "now if he could afford it." At the time of the dissolution of marriage, Larry was seventy-two years old. Both Larry and Rita were aware of the amount of their social security benefits. Larry, like Rita, has significant health concerns. Larry was required to assume nearly all of the marital debt. The instant record is lacking speculation as to the parties' financial positions at the time of retirement age. Further, as highlighted by the majority, Rita failed to present evidence that that the funds available to her would be inadequate to support a standard of living reasonably comparable to that enjoyed during the marriage.

Our cases repeatedly state that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each

case. *See, e.g.*, *In re Marriage of Becker*, 756 N.W.2d 822, 825–26 (Iowa 2008); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007); *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Our cases tend to emphasize the need to closely examine all the statutory factors and the entire record in each case. *See, e.g.*, *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484–87 (Iowa 2012). Further, the various factors listed in Iowa Code section 598.21A(1) (2018) cannot be considered in isolation from each other. *See Gust*, 858 N.W.2d at 408. Under these case-specific facts, I would affirm the trial court's determination as to the reduction of Rita's alimony upon Larry's retirement.